UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

BUILDING TRADES UNITED
PENSION TRUST FUND, *et al.*,

        Plaintiffs,

                              Case No. 23-cv-50-pp

    v.

SJ LANDSAPING, LLC,

        Defendant/Third-Party Plaintiff,

and

WISCONSIN LABORERS DISTRICT
COUNCIL AND ITS LOCAL UNION NO. 113,

        Third-Party Defendant.

---

**ORDER DENYING THIRD-PARTY DEFENDANT'S MOTION TO DISMISS
DEFENDANT'S THIRD-PARTY COMPLAINT (DKT.NO. 17)**

---

        Building Trades United Pension Trust Fund and other associated entities and their trustees (collectively "the Funds") initiated this suit against defendant SJ Landscaping, LLC, seeking payment for contributions allegedly required under a collective bargaining agreement. Dkt. No. 1. In turn, the defendant sued the Wisconsin Laborers District Council and its Local Union No. 113 (collectively "the Union") alleging fraud in the inducement, intentional misrepresentation and negligent misrepresentation, and seeking declaratory judgment. Dkt. No. 14. The Union seeks dismissal of the defendant's third-party complaint under Federal Rule of Civil Procedure 12(b)(6), dkt. nos. 17; 18 at 4, arguing that the suit is preempted by section 301 of the Labor

1

Management Relations Act, 29 U.S.C. § 185, and that the claim for declaratory judgment otherwise fails, dkt. no. 18.

## I.   The Defendant's Third-Party Complaint (Dkt. No. 14)

"[W]hen ruling on a motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing Bell Atlantic Corp. v. Twombley, 550 U.S. 544, 555-556 (2007)).

In its third-party complaint, the defendant alleges that in early 2021 it contacted the Union to discuss joining the Union. Dkt. No. 14 at ¶3. The defendant, by its principal and without the assistance of counsel, id. at ¶15, explained that it would not join the Union in 2021 unless the Union agreed to exclude certain projects from the defendant's obligation to remit funds to the Union, id. at ¶¶4, 5. The defendant asserts that because the defendant already had submitted bids on those projects based on non-union wages, it would lose money if it were required to remit funds to the Union. Id. at ¶4. The defendant and the Union agreed on a list of projects that were "grandfathered" and not subject to the Labor Agreement.[1] Id. at ¶6.

The defendant says that Union representatives informed the defendant that they could not alter the form labor agreement, but that they would attach the list of grandfathered projects as an addendum to the labor agreement. Id. at ¶11. The defendant alleges that no one from the Union informed the

_____

[1] The third-party complaint states, "A true and correct copy of the Grandfathered Projects List is attached hereto as Exhibit A." Dkt. No. 14 at ¶6. No such list is attached and there is no Exhibit A to the third-party complaint. The Union provided the list as an attachment to the declaration of its president and business manager, which it filed in support of the third-party defendant's motion to dismiss. Dkt. No. 19-3.

2

defendant that the Union could not enter into a "side agreement" with the defendant. Id. at ¶13.

The defendant says that on March 22, 2023, the Funds agreed to exclude from the labor agreement the projects on the list, with the exception of three projects. Id. at ¶16. According to the defendant, the Funds explained that those three projects were not properly included on the list because they were prevailing wage jobs or because the defendant was a sub-contractor for a union employer. Id. at ¶17.

With respect to its fraud in the inducement claim, the defendant alleges that the Union's statements that the entire list of grandfathered projects would be incorporated into the terms of the labor agreement (thereby excluding certain projects from the agreement) were untrue. Id. at ¶22. The defendant alleges that the Union made these statements with intent to defraud the defendant and to induce the defendant to join the union and execute the labor agreement. Id. at ¶¶23, 24. The defendant alleges that it reasonably relied on the Union's statements to its detriment. Id. at ¶¶ 25, 26.

The defendant also alleges intentional misrepresentation, asserting that it relied on the Union's representation that the projects on the list would be excluded from the labor agreement and that the Union knew that its statements to the contrary were untrue but made the statements to deceive the defendant. Id. at ¶¶29-32.

Alternatively, the defendant alleges that the Union negligently misrepresented that the projects on the list would be excluded, and that the defendant relied on those misrepresentations to its detriment. Id. at ¶¶35-38.

The defendant seeks declaratory judgment, asking the court to "[d]eclare that the Labor Agreement together with the entire Grandfathered Projects List

3

constitutes the enforceable contract between SJ Landscaping, LLC and the Union, or, in the alternative, declare that the Labor Agreement is null and void." Id. at 7, ¶B.

## II.     The Union's Motion to Dismiss (Dkt. No. 17)

### A.     Legal Standard

As the Union acknowledges, an assertion that a claim is preempted under §301 is properly presented as a motion to dismiss for a failure to state a claim under Rule 12(b)(6). SJ Healy v. Metro. Pier & Exposition Auth., 804 F.3d 836, 840 (7th Cir. 2015); but see Miller v. Southwest Airlines Co., 926 F.3d 898, 901 (7th Cir. 2019) (stating that the motion to dismiss the claim because it was preempted under the Railway Act "should have been labeled either as a judgment on the pleadings, Fed. R. Civ. P. 12(c), or a dismissal for lack of subject-matter jurisdiction").[2]

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

---

[2] Some courts have interpreted Miller as holding that Rule 12(b)(6) is not an appropriate basis for asserting preemption. See, e.g., Williams v. Jackson Park SLF, LLC, Case No. 19-cv-8198, 2020 WL 5702294, *2 (N.D. Ill. Sep. 24, 2020). This court does not agree. The Miller court held only that the district court erred in relying on Rule 12(b)(3), finding that it should have applied either Rule 12(b)(1) or 12(c). In referring to those two options, the appellate court acknowledged that it had not yet weighed in on the circuit split regarding whether preemption under the Railway Act was jurisdictional. See Carlson v. CSX Transp., Inc., 758 F.3d 819, 831 (7th Cir. 2014) (comparing Oakey v. US Airways Pilots Disability Income Plan, 723 F.3d 227(D.C. Cir. 2013) with Emswiler v. CSX Transportation, Inc., 691 F.3d 782 (6th Cir. 2012))). The court's failure to mention Rule 12(b)(6) appears to have resulted from the posture of the case and did not implicitly overrule the court's statement four years earlier in Healy. After all, in the main, a motion under Rule 12(c) differs from a motion under 12(b)(6) only with regard to the time it is filed.

As stated above, at the motion to dismiss stage, the court is required to assume that every well-pleaded allegation in the complaint is true and to draw all reasonable inferences in favor of the plaintiff. O'Brien v. Village of Lincolnshire, 955 F.3d 616, 621 (7th Cir. 2020). Aside from the complaint itself, the court may consider only "documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." O'Brien, 955 F.3d at 621 (quoting Williamson v. Curran, 714 F.3d 432, 436 (7th Cir. 2013)).

B.    Section 301 Preemption Generally

The Constitution's Supremacy Clause empowers Congress to preempt state laws. Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 208 (1985) (citing Gibbons v. Ogden, 9 Wheat. 1 (1824)). Although Congress has long regulated the field of labor relations, it never has chosen to fully occupy the field. Id. Whether and to what extent Congress has preempted state law comes down to Congressional intent. Id.

Section 301 of the Labor Management Relations Act states: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties . . . ." Id. at 209. The Supreme Court has held that §301 reflects "a congressional mandate to the federal courts to fashion a body of federal common law to be used to address disputes arising out of labor contracts. Id.; see also Lingle v. Norge Div. of Magic Chef, 486 U.S. 399, 410-11 (1988) (explaining that §301 reflects a "policy of fostering uniform, certain adjudication of disputes over the meaning of collective-bargaining agreements").

5

The Supreme Court found it untenable that a labor agreement could be subject to different meanings under state and federal law. Allis-Chalmers, 471 U.S. at 210 (discussing Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. Lucas Flour Co., 369 U.S. 95, 103 (1962)). But §301 preempted more than contract actions. Id. "[Q]uestions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort." Id. at 211. "Of course, not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301 or other provisions of the federal labor law." Id. But "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim or dismissed as pre-empted by federal labor-contract law." Id. at 220 (internal citation omitted).

Courts have struggled to draw the line at which a state law claim is "substantially dependent" on a collective bargaining agreement. The easy case is when a state law claim can allege violation of a duty arising from the collective bargaining agreement itself, BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers of Am., IAMAW District Lodge 4, 132 F.3d 824, 829 (1st Cir. 1997), as was the case in Lueck, 471 U.S. at 216. The more difficult case arises in a second category of claims—those requiring a court to interpret the collective bargaining agreement. BIW Deceived, 132 F.3d at 829; see also Smith v. Colgate-Palmolive Co., 752 F. Supp. 273, 277 (S.D. Ind. 1990) ("The test, though easy to state, 'section 301 preempts state law causes of

6

action which require interpretation of the terms of a collective bargaining agreement,' is often difficult to apply."). "Because the Supreme Court test lacked factual elaboration and because each application of the test necessarily turns on its unique circumstances, the courts have often come to apparently conflicting results." Colgate-Palmolive, 752 F. Supp. at 277.

Section 301 does not establish an impenetrable wall around collective bargaining agreements. The fact that a claim will require reference to a collective bargaining agreement does not necessarily mean that the claim is preempted. Hawaiian Airlines v. Norris, 512 U.S. 246, 261 n.8 (1994) (quoting Livadas v. Bradshaw, 512 U.S. 107, 124 (1994)). For example, a state law retaliatory discharge claim is not preempted even though it requires consideration of the collective bargaining agreement to determine if the employer had a basis to fire the employee. Lingle, 486 U.S. at 407. The Supreme Court has characterized such questions as "purely factual," which did not require construing the collective bargaining agreement. Id. "[I]nterpretation of collective-bargaining agreements remains firmly in the arbitral realm; judges can determine questions of state law involving labor-management relations only if such questions do not require construing collective-bargaining agreements." Id. at 411. "In summary, the overriding principle is that for preemption to apply, interpretation of the CBA and not simply a reference to it is required." Faehnrich v. Bentz Metal Prods. Co. (In re Bentz Metal Prods. Co.), 253 F.3d 283, 289 (7th Cir. 2001).

Only §301 preemption is at issue in the Union's motion to dismiss. Dkt. Nos. 8 at 6-13; 23 at 12-13); see also Colgate-Palmolive, 752 F. Supp. at 276 (discussing the three distinct kinds of preemption that may apply to with respect to federal labor law); Dkt. No. 21 at 12.

7

C.    Parties' Arguments

1.    *The Union's Preemption Argument*

The Union argues that the defendant's fraud and misrepresentation claims require interpretation of the collective bargaining agreement because all the claims depend on the defendant's reliance being reasonable. Dkt. No. 18 at 6-7.

It asserts that the court will need to assess whether the projects on the list fall within the labor agreement, and that this will require the court to determine what constitutes "highway and heavy construction work included in contracts awarded by the State of Wisconsin Department of Transportation [and] all work performed for any authority supervised by said Department of Transportation." Dkt. No. 19-1 at 3. The Union says that if the projects are not within the scope of the labor agreement, the defendant's reliance on the Union's representations could not have been detrimental. Dkt. No. 18 at 7.

Similarly, the Union argues that the defendant's reliance could not have been reasonable if the labor agreement explicitly rendered side agreements unenforceable. Dkt. No. 18 at 9-10. It maintains that this would require interpretation of the agreement's integration clause. Dkt. No. 19-1 at 4.

2.    *The Defendant's Argument*

The defendant responds that the labor agreement is not necessary to determine whether its reliance was reasonable. Dkt. No. 21 at 9. It asserts that even if the extent of the defendant's reliance were relevant to its damages, that would be insufficient to preempt its claims. Id. at 10. The defendant characterizes the Union's arguments as disingenuous; it says there will be no need to interpret the labor agreement because the Union does not actually allege that the three projects at issue are outside the scope of the agreement.

8

Id. at 11. The defendant emphasizes that at the time of the events that give rise to its third-party complaint, there was no agreement between the defendant and either the Union or the plaintiffs who brought the original complaint. Id. at 14-15.

D.     Preemption Analysis

Before analyzing the issue, the court notes the tangled procedural posture of the case (some of the reasons for which it will discuss at the end of this order). The motion to dismiss was fully briefed in October of 2023. On April 2, 2024, the defendant filed a motion for a status conference, pointing out that the summary judgment deadline was looming (the deadline was April 26, 2024) and advising the court that without a ruling on the motion to dismiss, it could not know the scope of its defenses or how to proceed at summary judgment. Dkt. No. 26. The defendant opined that the court should amend the scheduling order but advised the court that the plaintiffs and the third-party defendant (the Union) had advised the defendant that they objected to any alteration of the order. Id. at §§14-15. On April 3, 2024, the plaintiffs filed a brief opposing the request, construing it as a request to extend the discovery deadline and objecting. Dkt. No. 28.

The court did not address the defendant's request for a status conference in the two-and-a-half weeks after it was briefed. Had it done so, the court likely would have suspended the summary judgment briefing dates until it had resolved the motion to dismiss. But the court did not act, and two and a half weeks later—on April 22, 2024—the plaintiffs and the Union filed a motion for summary judgment. Dkt. No. 29. As the court explains more fully at the end of this order, the defendant has—sort of—responded to that motion, dkt. no. 41, and the plaintiffs and the Union have filed a reply, dkt. no. 49. There are

9

arguments in the summary judgment pleadings that are different from the arguments the parties made relating to the motion to dismiss. That muddies the waters. The court provides this background for the purpose of explaining that in considering the Union's motion to dismiss, it has considered *only* the arguments raised in that motion to dismiss (and not the arguments raised in the summary judgment pleadings).

The defendant first argues that the Union "added" the labor agreement to its third-party complaint to "convert this motion to dismiss into an improper summary judgment motion." Dkt. No. 21 at 7. It says that the labor agreement was "not at issue" in its claims and insists that the fact that the Union attached the agreement to the motion to dismiss "does not mean the Court must or should interpret it in ruling on this motion." Id.

Although it does not cite it, the defendant's argument obliquely references Fed. R. Civ. P. 12(d), which mandates that if, on a Rule 12(b)(6) motion to dismiss, "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment." But as the defendant acknowledges, there is an exception. A court may consider documents "that are (1) referenced in the plaintiff's complaint, (2) concededly authentic, and (3) central to the plaintiff's claim." Financial Fiduciaries, LLC. v. Gannett Co., Inc., 46 F.4th 654, 663 (7th Cir. 2022) (citations omitted). "This incorporation-by-reference doctrine prevents a plaintiff from avoiding dismissal by omitting facts or documents that undermine his case." Id. (citing Brownmark Films, LLC v. Comedy Partners, 682 F.3d 687, 690 (7th Cir. 2012)).

The third-party complaint refers to the labor agreement multiple times. Dkt. No. 14 at ¶¶6, 10, 11, 12, 19, 20, 22, 24, 29, 32, 35, 37, 38, 41, 42, 44. In

the prayer for relief, the defendant asks the court to declare that the labor agreement and grandfathered projects list constitute the enforceable contract, or in the alternative, to declare the labor agreement null and void. Id. at 7. The agreement is central to the claims alleged in the third-party complaint; if there were no labor agreement, there would be no reason for the defendant to file a third-party complaint alleging that the Union misrepresented that certain projects would be excluded from the labor agreement. The defendant asserts that incorporation-by-reference doctrine is "narrow," and that the labor agreement is relevant only to the original plaintiffs' claims against the defendant, not the defendant's third-party claims against the Union. The court disagrees.

But the fact that the defendant's claims arise only because of the existence of the labor agreement does not mean that they are preempted by §301. In fact, it is not enough that it may be necessary to read, understand and apply the labor agreement for the defendant to sustain its claims. See Lingle, 486 U.S. at 407. Preemption occurs only if it will be necessary for the court to interpret the labor agreement. Faehnrich, 253 F.3d at 289.

Courts have reached inconsistent conclusions regarding questions of §301 preemption vis-à-vis employers' claims that unions engaged in fraud or misrepresentation in the formation of a labor agreement. This court is literally in the middle of this circuit split. To the east in the Sixth Circuit, the defendant's claims likely would not be preempted. See CNH Am. LLC v. Int'l Union, United Auto., Aero. & Agric. Implement Workers of Am., 645 F.3d 785, 791 (6th Cir. 2011) (discussing Alongi v. Ford Motor Co., 386 F.3d 716 (6th Cir. 2004); Nw. Ohio Administrators v. Walcher & Fox, Inc., 270 F.3d 1018 (6th Cir. 2001)). To the west in the Eighth Circuit, the defendant's claims likely would be

preempted. See Trs. of the Twin City Bricklayers Fringe Benefit Funds v. Superior Waterproofing, Inc., 450 F.3d 324, 331-32 (8th Cir. 2006) (discussing Schuver v. Midamerican Energy Co., 154 F.3d 795, 798 (8th Cir. 1998)).

The defendant also likely would be allowed to proceed with its claims if it were in the Ninth Circuit. Operating Eng'rs Pension Tr. v. Wilson, 915 F.2d 535, 538 (9th Cir. 1990). The Court of Appeals for the Ninth Circuit has held that §301 will preempt a claim only if "there is an active dispute over the meaning of contract terms. A hypothetical connection between the claim and the terms of the CBA is not enough to preempt the claim." Dent v. NFL, 902 F.3d 1109, 1116 (9th Cir. 2018) (emphasis in original) (quoting Alaska Airlines, Inc. v. Schurke, 898 F.3d 904, 921 (9th Cir. 2018)). That court also has held that because the need for interpretation of a collective bargaining agreement must be determined by the plaintiff's claim, "a defense based on a CBA does not give rise to preemption." Dent, 902 F.3d at 1116.

The Seventh Circuit has not addressed §301 preemption under analogous circumstances—an employer alleging that it was deceived into signing a collective bargaining agreement. Perhaps the closest case is Smith v. Colgate-Palmolive Co., 943 F.2d 764 (7th Cir. 1991). Colgate chose to shutter its plant in New Jersey, so it entered into a closure agreement with the union that modified the existing collective bargaining agreement. Id. at 765. Certain union members then relocated from New Jersey to Indiana, allegedly relying on promises that their employment would be secure in Indiana. Id. at 766. When the relocated workers soon were laid off, they sued Colgate alleging misrepresentation.

The Smith court found that the employees' misrepresentation claims were preempted by §301. Id. The court discussed Caterpillar, Inc. v. Williams,

482 U.S. 386 (1987) at length. It found Caterpillar distinguishable because the procedural posture in which the §301 preemption issue arose there—whether removal was proper—cabined the court's analysis. Colgate-Palmolive, 943 F.2d at 769. It opined that the collective bargaining agreement was relevant only to Caterpillar's defense, and that a defense cannot be a basis for removal. The Seventh Circuit also found that the underlying dispute centered on alleged contracts between Caterpillar and individual employees, not the collective bargaining agreement with the union. Id. at 770.

The Seventh Circuit concluded that it would be required to interpret the closure agreement to assess whether the employees' reliance on the alleged misrepresentations was reasonable. Id. Although this was a defense, the court held that it was appropriate to consider defenses in resolving a §301 preemption question. Id. (stating that the court is "free to resolve this question by looking beyond the plaintiffs' complaint to the defenses Colgate asserts"). Also significant in the Seventh Circuit's analysis was the fact that the employees were subject to the closure agreement at the time of the alleged misrepresentations. Id.

The conflict in authority reflected by the circuit split on this question persists among district courts within the Seventh Circuit. In Trs. of the Chi. Painters & Decorators Pension, Health & Welfare v. N. Ave. Constr. Co., Case No. 01 C 4297, 2002 WL 63815, *3 (N.D. Ill. Jan. 17, 2002), the district court for the Northern District of Illinois allowed an employer to pursue a misrepresentation claim against a union. When the trust funds sued the employer for unpaid contributions, the employer sought permission to implead the union. Id. at *1. The employer alleged that the union had misled it into believing that their agreement was for only a single project. With scant

13

discussion of the §301 preemption issue, the court allowed the employer to pursue the claim against the union. Id. at *3; see also Operating Eng'rs Local 139 Health Ben. Fund v. Greg's Excavating, Case No. 99-cv-917-WEC, Dkt. No. 32, 2000, U.S. Dist. LEXIS 24837 (E.D. Wis. July 28, 2000) (denying motion to dismiss third party under Garmon preemption[3] and §301 preemption where the employer alleged that fraud had been committed in the execution of the agreement rather than in violation of the agreement).

The district court for the Western District of Wisconsin reached the opposite conclusion in Wis. Laborers Health Fund v. Safe Abatement for Everyone, Inc., Case No. 13-cv-866-bbc, 2014 WL 2873880, *6 (W.D. Wis. June 17, 2014). There, the union trust funds sued seeking unpaid contributions. The defendant counterclaimed, alleging fraud in the inducement because the union allegedly misrepresented the scope of the agreement. The union moved to dismiss on the ground of §301 preemption. It argued that because the agreement explicitly stated its scope, it would be necessary for the court to analyze the content and meaning of the agreement to determine whether the defendant's reliance was reasonable. The court agreed and found the misrepresentation claim preempted under §301. Id. at *12-13.

While the facts in Safe Abatement are analogous to those in this case and the court's reasoning is thorough, the record before this court does not support the same conclusion. Whether a claim requires interpretation of a collective bargaining agreement "requires case-by-case factual analysis . . .." Faehnrich, 253 F.3d at 285. As stated, §301 preempts a state law claim only if

---

[3] San Diego Bld. Trades Council v. Garmon, 359 U.S. 236, 245 (1959) (requiring deferral to the National Labor Relations Board when the issue to be decided "possess[es] the capability of interfering with the national policy for which the National Labor Relations Act was created.")

the claim requires interpretation of the collective bargaining agreement. <u>Lingle</u>, 486 U.S. at 399 ("an application of state law is preempted by § 301 of the Labor Management Relations Act of 1947 only if such application requires the interpretation of a collective-bargaining agreement"). Considering this standard in light of the movant's burden at the motion to dismiss stage, the movant must show that there is no plausible way that the plaintiff can prove its state law claim without the court interpreting the collective bargaining agreement. <u>Cf.</u> <u>Ashcroft</u>, 556 U.S. at 678.

The Union has demonstrated that interpretation of the labor agreement *might* be necessary to sustain the defendant's claims. It has not shown that the court *will be* required to interpret the labor agreement. Because at this early stage the Union has not shown that the defendant's claims will require interpretation of the labor agreement, <u>see</u> <u>Lingle</u>, 486 U.S. at 413, the court must deny the Union's motion to dismiss.

E.    <u>The Defendant's Claim for Declaratory Judgment</u>

In Claim Four of the third-party complaint, the defendant alleges:

41. The Union agreed that the entire Grandfathered Projects List was incorporated into the terms of the Labor Agreement.

42. The Union agreed that [the defendant] would not be required to remit any funds under the Labor Agreement stemming from the projects listed on the Grandfathered Projects List.

43. The Labor Agreement and the entire Grandfathered Projects List constitute the enforceable contract between [the defendant] and the Union, and its terms are enforceable on the Union and all of the Plaintiff Funds.

44. In the alternative, if the entire Grandfathered Projects List is found not to be a part of the Labor Agreement, then the Labor Agreement should be declared null and void and unenforceable as there was no meeting of the minds between the parties on all material terms.

15

Dkt. No. 14 at ¶¶41-44. As the court mentioned earlier, the defendant seeks a declaration "that the Labor Agreement together with the entire Grandfathered Projects List constitutes the enforceable contract between [the defendant] and the Union, or, in the alternative, declare that the Labor Agreement is null and void." Id. at 7, ¶B.

The Union argues that "to the extent Count IV of the Third-Party Complaint seeks a declaration as to what specific projects are included in the Grandfather [sic] Projects List, the claim for declaratory relief should be dismissed for failing to adequately allege that an actual controversy exists between SJ Landscaping and [the Union]." Dkt. No. 18 at 14. It asserts that the third-party complaint "does not allege that [the Union] has taken a position on whether the Grandfathered Projects List includes [the three purported excluded projects]." Id. at 15. It also asserts that the third-party complaint "does not allege the legal relations between [the defendant] and [the Union] would be affected" by a decision on that issue; it says that the third-party complaint "does not allege either anything [the Union] could gain should the Court find the three projects are excluded from the List, or anything [the Union] could lose should the Court find the three projects are included in the List." Id.

Like all suits in federal court, a declaratory judgment action under 28 U.S.C. §2201 requires an actual controversy between the parties. See Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240 (1937). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Golden v. Zwickler, 394 U.S. 103, 108 (1969) (quoting Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941)).

16

The Union acknowledges that there is a dispute between the plaintiff in the original complaint and the defendant over "the payment of contributions" for the three purportedly excluded projects. The Union insists that the controversy is not between it and the defendant; it is between the defendant and the Funds. Dkt. No. 18 at 15. But the Union has not gone so far as to suggest that the Funds would be proper defendants for the defendant's claim for declaratory judgment. It argues only that the court should dismiss the declaratory judgment count of the third-party complaint because the defendant did not "adequately allege that there is a concrete and actual controversy between the [Union] and [the defendant] over whether the Grandfathered Projects list includes [the three purportedly excluded projects]." Id. at 16.

The defendant responds that the Union cannot be divorced from the Funds. Dkt. No. 21 at 16. It alleges that the Funds act for the benefit of the Union. Id. And, according to the defendant, the relevant controversy is not whether the Union will be harmed but whether the defendant is being harmed and will continue to be. Id.

Although the Union and the Funds are legally distinct, they are intimately related. Contributions to the Funds flow from contracts between the employer and the Union and from the labor of the Union's members. It was the Union, not the Funds, that entered into the agreement with the defendant. The Funds act for the benefit of the Union (and ultimately the Union's members) in collecting those funds from employers. If the court concludes that the three purportedly excluded projects are included, more payments would be due on behalf of the Union and its members; if the court concludes that the three projects are not included, fewer payments would be due on behalf of the Union and its members. And of course, if the court were to grant the alternative relief

17

the defendant seeks—declaring the labor agreement null and void—the Union and its members would be impacted.

Against this backdrop, the Union is a proper third-party defendant in the defendant's third-party claim for declaratory judgment regarding the labor agreement. Although the Union has not formally stated its opposition to the defendant's stance regarding the labor agreement, the court can fairly infer that opposition from the overall record and the inherent obligations of unions to their members. At this point, the defendant has plausibly alleged that there exists a controversy between the parties that will directly affect their rights and obligations to a specific and substantial degree. See United States Nat'l Bank v. Indep. Ins. Agents of Am., 508 U.S. 439, 446, (1993) (quoting Nashville, C. & St. L. Ry. v. Wallace, 288 U.S. 249, 262 (1933)).

In the alternative, the Union argues that court must dismiss the defendant's request that the court "declare that the Labor Agreement is null and void" because the defendant cannot simply walk away from a contract on the basis that there has been no meeting of the minds. Dkt. No. 18 at 16.

In Colfax Envelope Corp. v. Local No. 458-3M, Chi. Graphic Commc'ns Int'l Union, 20 F.3d 750 (7th Cir. 1994), Judge Posner explored the meaning of the adage that a contract must embody a meeting of the minds and opined that the concept is, at a minimum, overstated. He explained that although a mutual mistake (or latent ambiguity) may allow parties to walk away from a contract, disagreement or uncertainty as to the meaning or scope of an agreement means only that the court must employ principles of contract interpretation. See Praxair, Inc. v. Hinshaw & Culbertson, 235 F.3d 1028, 1034 (7th Cir. 2000) (discussing Colfax Envelope, 20 F.3d 750). The sort of meeting of the minds required for a contract is far more basic—constituting an offer, an

18

acceptance and consideration—rather than agreement as to the meaning of all the details. See WeR1 World Network v. CyberLynk Network, Inc., 57 F. Supp. 3d 926, 935 (E.D. Wis. 2014). If every disagreement over contractual language were sufficient to vitiate a contract, most contract disputes would end with the court invalidating the contract. Colfax, 20 F.3d at 752 ("Most contract disputes arise because the parties did not foresee and provide for some contingency that has now materialized—so there was no meeting of minds on the matter at issue—yet such disputes are treated as disputes over contractual meaning, not as grounds for rescinding the contract and thus putting the parties back where they were before they signed it.")

The defendant has not alleged that the Labor Agreement resulted from a mutual mistake; it has alleged that because it and the Union (and the Funds) disagree about the meaning of the contract, there was no proverbial meeting of the minds. The defendant's claim amounts to what Judge Posner characterized as a classic "heads I win; tails you lose" argument. Id. at 754. The defendant's position is that either its interpretation of the contract controls and all the projects on the list are exempt from the agreement (heads the defendant wins) or there is no contract because the only agreement to which it agreed was one in which the three projects were excluded, in which case it owes nothing (tails the Funds/Union lose).

Based on the allegations in the third-party complaint, the defendant is not entitled to a declaration that the labor agreement is null and void because there was no meeting of the minds. But the court cannot grant the Union's motion to dismiss this aspect of the defendant's claim for declaratory relief. Under Rule 12(b)(6) the court may dismiss only *claims*, not parts of claims (or

particular requests for relief). <u>Bilek v. Fed. Ins. Co.</u>, 8 F.4th 581, 587 (7th Cir. 2021) (quoting <u>BBL, Inc. v. City of Angola</u>, 809 F.3d 317, 325 (7th Cir. 2015)).

Because the defendant has alleged a plausible claim for declaratory relief regarding the scope of the labor agreement, and specifically whether the projects on the grandfathered projects list are exempt from the Labor Agreement, the court must deny the Union's motion to dismiss Claim Four of the third-party complaint.

## III. Procedural Posture.

The Funds filed the complaint on January 12, 2023; the same day, the Clerk of Court instructed the Funds to file a magistrate consent/refusal form within twenty-one days. On March 13, 2023, the clerk issued a second notice asking the Funds to file the consent/refusal form. The Funds filed the form on March 27, 2023. After Judge Duffin entered the July 19, 2023 scheduling order, the defendant filed a third-party complaint against the Union. Dkt. No. 14. On September 19, 2023, Attorney Yingtao Ho, who represents the Funds, filed the instant motion to dismiss the third-party complaint on behalf of the Union. Dkt. No. 17. Over two months later, on November 30, 2023, the Funds and the Union filed a consent/refusal form; at that point, the Clerk of Court reassigned the case to this court.

As the court explained above, on April 2, 2024, the defendant filed a Rule 7(h) motion asking the court to calendar a status conference to discuss the scheduling and to emphasize that it needed a ruling on the motion to dismiss to ascertain the scope of its defenses. Dkt. No. 26. Before the court had ruled on either of the pending motions, the Funds filed a motion for summary judgment on the complaint and third-party amended complaint. Dkt. No. 29. The defendant responded that resolution of the summary judgment motion was

20

not appropriate without resolution of the pending motion to dismiss. Dkt. No. 40 at 7. The defendant explained that because of limited resources and the procedural posture of the case, it had not pursued discovery with respect to the third-party complaint issues; it asked the court to treat its response as a motion similar to 56(d) to deny or suspend the summary judgment motion until it resolves the motion to dismiss. Id.

Attorney Ho, acting on behalf of the Funds, construed the motion to hold a status conference as a motion to extend the discovery period and argued that the discovery deadline had passed. Dkt. No. 28. He asserted that the defendant had made no attempt to ask for relief prior to the discovery deadline and had failed to show excusable neglect or good cause for amending the deadline. Id.

The bottom line is that the Clerk of Court transferred the case to this court with a schedule that this court did not set. The Funds put the cart before the horse by filing a summary judgment motion on a third-party complaint that was the subject of a motion to dismiss. Additionally, the Funds used that procedure to make preemption arguments that their attorney did not raise in support of the motion to dismiss. Although the court now has ruled on the motion to dismiss, it will grant the defendant's motion for a status conference, which it will use to discuss with the parties the procedural status of the case and issues related to how the parties have chosen to proceed, as how to deal with the premature summary judgment briefing.

## IV. Conclusion

The court **DENIES** the Wisconsin Laborers District Council and its Local Union No. 113's motion to dismiss SJ Landscaping, LLC's third-party complaint. Dkt. No. 17.

The court **GRANTS** the defendant's Rule 7(h) expedited non-dispositive motion for status conference. Dkt. No. 26. The court **ORDERS** that the parties must appear for a telephonic status conference on **January 23, 2025 at 3:30 PM**. The parties are to appear by calling the court's conference line at 551-285-1373 and entering Meeting ID 161 4901 8989 and Passcode 190021 when prompted.

Dated in Milwaukee, Wisconsin this 4th day of November, 2024.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**